### In re Bobby Noah GRAVEN & Millie Ann Graven, d/b/a Graven Farm, Debtors.

### Bankruptcy No. 87–04885–S–2–12.

United States Bankruptcy Court, W.D. Missouri, S.D.

March 23, 1988.

Rick Fink, Chapter 12 Trustee.

James R. Doran, Springfield, Mo., for debtors.

Gary A. Powell, Springfield, Mo., for Federal Land Bank.

Mark Fitzsimmons, Springfield, Mo., for Mercantile Wright County Bank.

Kerry L. Myers, Springfield, Mo., for Boatmen's Mountain Grove Nat. Bank.

James L. Bowles, Springfield, Mo., for Pillsbury Co.

### MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtors Bobby Noah Graven and Millie Ann Graven, husband and wife, filed their petition under Chapter 12 on November 12, 1987. They thereafter filed their Plan of Reorganization and a hearing on confirmation was set for March 2, 1988. A number of creditors objected to confirmation. Foremost among the objectors was the Federal Land Bank of St. Louis, hereinafter Bank, which also filed a Motion For Continuance of the Chapter 12 Confirmation Hearing Pending Completion Of Investigation By Chapter 12 Trustee. Section 1202(b)(2) provides that the trustee shall:

"(2) perform the duties specfied [sic] in section 1106(a)(3) and 1106(a)(4) of this title if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders;"

This Court treated the Bank's Motion as not only a motion to continue but as a request by a party in interest for the Court to direct the Chapter 12 Trustee to proceed under § 1106(a)(3) and (4) which provide:

"(a) A Trustee shall:

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;"

Upon that basis the parties presented evidence and the Court issues this opinion.

The evidence indicates that in late 1985 debtors issued a financial statement to the Federal Land Bank and to the local Mercantile Bank that showed assets of over one million dollars in realty and personalty owned. However, the evidence also indicated that in January of 1985 a creditor, Pillsbury Company, obtained a substantial judgment against debtor Bobby N. Graven. In that same month Bobby N. Graven, or both debtors, created two Missouri corporations. They were Graven Realty Company and Graven Auction Company. In January of 1985, Bobby N. Graven *only*, then executed and recorded warranty deeds to all the real estate then in the name of either himself or both of debtors to said two corporations. Approximately a year later, in January of 1986, Millie Ann Graven executed her individual warranty deeds to the same real estate, once again in favor of the two aforesaid corporations. However, her warranty deeds were not recorded until in February of 1987. At some time in 1985 or 1986 (the testimony was not clear which) either Bobby N. Graven or Bobby N. Graven and Millie Ann Graven (debtor Bobby N. Graven testified both ways) transferred all of the livestock owned (in excess of 150 head of primarily milk cows), all the farm equipment and machinery owned, and all of the family motor vehicles except one to the aforesaid two corporations. Debtor Bobby N. Graven testified he believed there was an executed Bill of Sale but could not find or exhibit same when questioned by the Court.

Meanwhile, leases of the property back to debtors were executed by the corporations through the person of Bobby N. Graven, president of the two corporations. It perhaps goes without saying that the terms of the leases were extremely favorable to debtors. However, since there was no evidence that the corporations gave any consideration for any of the property received,

that may also explain why the terms were so favorable.

Contemporaneously, i.e., in January of 1986, debtor Bobby N. Graven created an irrevocable trust for his three children, all of whom are emancipated. His oldest son was named Trustee. All of the issued and outstanding stock of the two corporations was transferred to the Trust. There was no evidence of any consideration being paid or received. The Trustee has received no money, managed no assets, and done nothing in regard either to the affairs of the two corporations or to the assets that facially belong to the corporations. He explained that his father took care of all that.

The debtors are represented by able counsel from Atlanta, Georgia, as well as able local counsel from Springfield, Missouri. Evidence as to what transpired more than one year prior to the filing of the petition came into the record only over their "statute of limitations" objections. Although a trustee may be bound by the one year time frame set out in § 548 of the Bankruptcy Code, some courts have held that he may elect to proceed under § 544(b) which here might allow him to invoke Missouri fraudulent conveyance law as well as the applicable Missouri statute of limitations. *In re Hollis & Co.,* 83 B.R. 586 (Bkrtcy.E.D.Ark.1988). See also *Joe T. Dehmer Distributors, Inc. v. Temple,* 826 F.2d 1463, 1466, n. 6 (5th Cir.1987); *In re Mankin,* 823 F.2d 1296, 1299, n. 1 (9th Cir.1987). Of course, should the trustee find evidence supporting a cause of action under Missouri's fraudulent conveyance statute, he would have to prove the elements required by that statute as opposed to merely finding the less stringent elements necessary to prove a fraudulent transfer under § 548, particularly § 548(a)(2).

The Court assumes that it will come as no surprise to anyone who has read this far, that the Court does direct that Rick Fink, the Chapter 12 Trustee in the Western District of Missouri, conduct an investigation (as authorized by § 1202(b)(2)) under § 1106(a)(3) and report to the Court under § 1106(a)(4). Should the trustee wish to employ counsel, he may apply to the Court. However, it seems to the Court that this is

one instance that counsel who represent creditors should not be employed because of potential conflicts of interest.

Further, the Court charges the trustee that while none of the four counsel representing creditors at any time mentioned, either orally or in writing, the Missouri case law pertaining to the purported transfer of entirety owned real estate by separate and individual warranty deeds executed by the two tenants which are contemporaneous in no aspect, the Court wishes the trustee to consider same. For an excellent starting point on said subject, the Trustee may wish to consult *Gill on Missouri Titles*. Further, the Court charges the trustee that while none of the four counsel representing creditors at any time mentioned, either orally or in writing, § 428.080 Mo.R.S., the Court wishes the trustee to consider same. In effect, the Court directs an investigation into the facts generally and does not request any conclusions but merely points out two areas of concern that the Court harbors in view of the pleadings and oral statements so far before this Court. A full investigation of the facts herein may indicate neither body of law has any pertinence and the Court has not researched into either area beyond remembrance of what thirty-five years of practice stores in the Court's mind.