In re Anthony Lee GROSS, d/b/a
Farmer, and Sharlene Marie
Gross, Debtors.

Bankruptcy No. 87–40662–PKE.

United States Bankruptcy Court,
D. South Dakota.

Nov. 27, 1990.

Larry Nelson, Sioux Falls, S.D., for petitioner.

J. Bruce Blake, Blake Law Offices, Sioux Falls, S.D., for respondents.

John C. Quaintance, Quaintance & Johnson, Sioux Falls, S.D., for Farm Credit Bank of Omaha.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### ACTION

Chapter 12 Trustee/Movant Rick A. Yarnall ("Trustee") filed a Bankr.R. 2004 ("2004") examination motion to depose Debtors/Respondents Anthony Lee and Sharlene Marie Gross ("Debtors" or "Grosses") on grounds the Trustee believes Debtors, post-confirmation, transferred real estate they failed to list on their schedules. Debtors resist any discovery attempt, arguing that, because their plan has been confirmed over 180 days, the Trustee acts without authority. For reasons articulated below, Trustee's motion is denied and dismissed. The instant matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over the parties and subject matter under 28 U.S.C. § 1334. This Memorandum Decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankr.R. 7052.

### FINDINGS OF FACT

Husband and wife family farmers, Anthony Lee and Sharlene Marie Gross, filed Chapter 12 on November 11, 1987. Rick A. Yarnall was appointed as the Standing Chapter 12 Trustee. The first meeting of creditors occurred on December 14, 1987.

On March 16, 1988, this Court confirmed Grosses' Chapter 12 reorganization plan. There has not been any allegation that the Debtors are delinquent in making their plan payments.

Debtors' Statement of Financial Affairs, with supplement, listed certain real estate. Debtors' plan, as amended, noted the Grosses own 480 acres of agricultural land.

Trustee alleges Sharlene Gross conveyed all right, title, and interest to land described as the SE¼ of 23–110–62, Beadle County, South Dakota, to Tom Gross. Details of the transfer are sketchy and unclear. The land allegedly conveyed is not listed in Debtors' schedules, plan, or in any document Debtors filed. The Debtors never advised the Trustee of their said interest.

Trustee moved for a 2004 examination to discover the circumstances of the alleged transfer. Trustee's counsel fervently argued that statutory duties require the Trustee to investigate the suspicious transaction. Counsel for Farm Credit Bank of Omaha, a creditor of the Debtors, appeared and supported the Trustee's 2004 examination motion. Debtors' counsel resisted any discovery attempt on grounds the Debtors' plan has been confirmed for over 180 days, the Trustee's motion exceeds his statutory duties, and the Debtors committed no fraud. A span of more than two years separates the Grosses' plan confirmation from the date Trustee moved to hold a 2004 examination of each Debtor to investigate Debtors' financial circumstances and their business records.

## ISSUES

1. May a bankruptcy court place an affirmative duty on a Chapter 12 Trustee to investigate a debtor pursuant to 11 U.S.C. § 1202(b)(2)? Yes.

2. Does a Chapter 12 Trustee exceed the scope of his statutory duties when he seeks a 2004 examination of debtors, more than 180 days post-confirmation, when the Trustee believes the debtors omitted estate property from their bankruptcy schedules and plan? Yes.

## CONCLUSIONS OF LAW

Adjudication of whether a 2004 examination request from a Chapter 12 Trustee, more than 180 days post-confirmation, is proper requires the Court first ascertain the Trustee's duties, then balance the duties against the case's 180–day–plus post-confirmation status. In other words, a Trustee's duty to ascertain a family farmer's assets must exist in the Bankruptcy Code and the realm of such duty need be analyzed in light of the case being administratively closed with the Debtors successfully operating under their plan for more than two years.

### I.

11 U.S.C. § 1202 lists several duties of a Chapter 12 Trustee. Of relevance is Subsection 1202(b)(2), which provides:

"(b) The trustee shall—

'. . . .

'(2) perform the duties specified in section 1106(a)(3) and 1106(a)(4) of this title if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders.' "

Cause warranting Section 1202(b)(2)'s application includes reliable information that the debtor fraudulently dealt with estate assets. *In re Graven*, 84 B.R. 630, 631 (Bankr.W.D.Mo.1988). Trustee's motion to discover circumstances surrounding a suspicious transfer may amount to cause.

Section 1202(b)(2) authorizes an investigation in accord with Section 1106(a)(3) and (4), which states:

(a) A trustee shall—

. . . .

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

Section 1202(b)(2) authorizes Trustee to seek the Court to order Trustee to perform 11 U.S.C. § 1106(a)(3) and (4) duties. A Trustee is to report his investigation to the court to insure the prosecution of any available cause of action. 5 *Collier on Bankruptcy* ¶ 1106.1, at 1106–29 (15th ed. 1979). Other Trustee duties enunciated in Section 1202 are either inapplicable or collaterally related to the alleged real estate transfer sought to be investigated.

■ The Trustee's duty to investigate under Section 1202(b)(2) utilizes Section 1106(a)(3) and (4), which is also applicable in a Chapter 11 case. Many similarities exist between investigatory duties in Chapters 11 and 12 because several statutory provisions are alike. Chapter 11 investigation duties provide some guidance because the reporters are replete with Chapter 11 cases on the duty to investigate, as compared to scant Chapter 12 decisions on the subject. However, unlike a Chapter 11 case and a Chapter 13 case, Trustee may not investigate a debtor's business unless specifically ordered by the court. 5 *Collier* ¶ 1202.2, at 1202–7. The reduced Trustee's role reflects Congress' decision to permit family farmers to continue farming without assistance or interference from a Trustee. *Id.*

■ Ample authority places a positive duty upon Trustee to investigate a debtor's financial condition on the court's order. *In re Franklin–Lee Homes, Inc.,* 102 B.R. 477, 480 (E.D.N.C.1989); *In re Temp–Way Corp.,* 95 B.R. 343, 345 (E.D.Pa.1989); *In re Cinderella Clothing Indus., Inc.,* 93 B.R. 373, 377 (Bankr.E.D.Pa.1988); *Graven,* 84 B.R. at 632. Section 1202(b)(2) expressly enunciates such duty which bankruptcy courts uniformly uphold. *In re Martens,* 98 B.R. 530, 533 (Bankr.D.Colo. 1989); *Graven,* 84 B.R. at 631. Where the language of a statute is clear, the sole function of the court is to enforce it by its terms. *See U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A duty to investigate, on court order, clearly exists in 11 U.S.C. § 1202(b)(2). As a general rule, Trustee's stance that statutory duty binds him to zealously investigate upon court order and vanguard proper administration of the Debtors' estate is correct.

■ The Trustee maintains his statutory duty to investigate an alleged fraudulent act mandates a 2004 examination to ascertain the real estate transfer's circumstances. Trustee aptly identifies a 2004 examination as a proper device permitting the Trustee to quickly discover the size and whereabouts of a bankrupt's estate. *Matter of Wilcher,* 56 B.R. 428, 433 (Bankr.N. D.Ill.1985). A 2004 examination would enable Trustee to ascertain circumstances surrounding the alleged real estate transfer.

■ Analysis of the Trustee's discovery request, however, is not limited to viewing Section 1202 duties in isolation of the rest of the Bankruptcy Code. The Bankruptcy Code is to be interpreted as a whole, with the different sections interrelated. Trustee's duty to investigate, as any duty, must be examined within the context in which the duty applies in order to determine the scope or extent of such duty. The court has latitude in ordering the goals of a Section 1106(a)(3) investigation. *Franklin–Lee Homes,* 102 B.R. at 480; *Graven,* 84 B.R. at 632; 5 *Collier* ¶ 1106.01[b], at 1106–24. The scope of Trustee's duty to investigate must be considered with the Debtors' post-confirmation status.

## II.

■■■■ A confirmed plan binds the debtors, equity holders, and the creditors. 11 U.S.C. § 1227. The rights of the parties have been defined by the court-approved plan. Under 28 U.S.C. § 586(e)(1)(B), Trustee administers the case for a percentage fee of the payments made by debtors to Trustee for payment. *In re Heller,* 105 B.R. 434, 437 (Bankr.N.D.Ill.1989). A bankruptcy court's jurisdiction, post-confirmation, is limited to matters such as enforcing its orders, protecting its confirmation decree, preventing interference with execution of the debtor's plan, and assisting in the plan's operation. *Goodman v. Phillip R. Curtis Enters., Inc.,* 809 F.2d 228, 232 (4th Cir.1987); *Cinderella,* 93 B.R. at 376. Because Trustee's motion ultimately could challenge the Grosses' plan and debt discharge, this Court finds it has jurisdiction to hear the instant matter. Also limited is an entity's ability to modify or reverse a confirmed plan.

■■■■ A Trustee's post-confirmation examination request, potentially, could result in a motion to modify or revoke the confirmation or a complaint objecting to discharge. Trustee's discovery request, therefore, ultimately attacks the confirmed plan in order to block a discharge for wrongdoing or to otherwise deal with alleged omitted property. Trustee's 2004 examination seeks to discover facts underlying an alleged transfer which implicitly contemplates Trustee bringing an action to revoke or modify Debtors' confirmed plan or objecting to discharge upon successful plan completion under 11 U.S.C. § 1228(d). Revocation of a confirmed plan or revocation of a discharge may occur only if fraud exists. 11 U.S.C. §§ 1228(d), 1230(a). The grave inference of fraud compels the Court to consider the implied revocation, modification, or discharge action underlying Trustee's examination request.

Trustee, as any entity moving to revoke a confirmed plan, must survive the initial statute of limitations hurdle found in 11 U.S.C. § 1230, stating, in relevant part:

"(a) On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1225 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud."

Unless the Trustee meets Section 1230's requirements, revocation cannot be accomplished, and permitting a 2004 examination would be meaningless as to revoking the plan.

■■■■ A confirmation order generally may be vacated only if fraud is alleged to have been perpetrated in its procurement and then only if a motion to revoke is filed within 180 days of the confirmation order's entry. 11 U.S.C. §§ 1144, 1230, 1330; *In re Tuan Tan Dinh,* 90 B.R. 743, 745 (Bankr.E.D.Pa.1988). No dispute exists that Debtors' plan has been confirmed more than 180 days. Section 1144, controlling Chapter 11 cases, has an express 180-day confirmation revocation restriction like Section 1230, which governs Chapter 12 cases. The 180–day revocation statute of limitations of confirmed plans is absolute and strictly construed in Chapter 11 cases. *Matter of Newport Harbor Assocs.,* 589 F.2d 20, 22 (1st Cir.1978); *Cinderella,* 93 B.R. at 376. A standard akin to Fed.R. Civ.P. 60 may be applied. *Id.*

■■■■ Consideration of an express 180–day limitation, and the policies of finality and not rewarding those who sleep on their rights, warrants the Court to strictly construe Chapter 12's 180–day revocation notwithstanding the "if and only if fraud exists" language found in Section 1144 but not in Section 1230. Similarly, a party in interest's motion to modify a plan cannot be forced upon the debtor without meeting numerous requirements in 11 U.S.C. § 1229. *In re Pearson,* 96 B.R. 990, 993 (Bankr.D.S.D.1989). With more than 180 days elapsing since the Grosses' Chapter 12 plan was confirmed, not even fraud can revoke or force an unlimited modification of the plan. But for 11 U.S.C. § 1228(d) and the need to provide guidance by honing Section 1202(b)(2)'s duty, Trustee's examination request would be denied at this point because the Trustee's motion is well

beyond Section 1230's 180–day statute of limitations to revoke the Grosses' plan.

At the completion of the plan, the Chapter 12 debtor gets a discharge under 11 U.S.C. § 1228(a) and (b). *In re Butler*, 97 B.R. 508, 514 (Bankr.E.D.Ark.1988). Revocation of the discharge under Section 1228(d) states:

> (d) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—
>
> > (1) such discharge was obtained by the debtor through fraud; and
> >
> > (2) the requesting party did not know of such fraud until after such discharge was granted.

While any entity cannot seek to revoke the Grosses' confirmed plan since more than 180 days have elapsed, and forced plan modification is probably elusive, fraud remains a challenge to discharge under Section 1228. The fraud committed must be more than some fraud perpetrated during the case; it must be directly tied to the debtor securing the discharge. 5 *Collier* ¶ 1228.01, at 1228–9. 11 U.S.C. § 1228(d) remains a potential basis underlying Trustee's 2004 examination request because Debtors' discharge hearing has not occurred as yet.

While a motion for discharge is not now before the Court and the facts of the alleged fraud are presently unclear, the Court assumes, arguendo, that Trustee maintains standing in order to chisel out Trustee's Section 1202(b)(2) duties. Therefore, unless the Trustee proves fraud, an action attacking the discharge of debt, after Anthony and Sharlene Gross complete their plan, would be unsuccessful. The Court shall treat Trustee's 2004 examination request in light of debt discharge because, at this late date, fraud will not revoke or unilaterally modify the confirmed plan, but a denial of discharge effectively foils fraudulent debtors from achieving their goals. While Trustee never expressly alleged fraud in his 2004 examination motion, the Court interprets Trustee's motion as impliedly referencing fraud, since only

fraud, meeting Section 1228(d)'s requirements, would warrant denying the Grosses a discharge or revoking the confirmed plan had the motion been filed within 180 days of confirmation.

Generally, pleadings involving fraud require that all averments of fraud shall be stated with particularity. Fed.R. Civ.P. 9; Bankr.R. 7009; *Matter of Universal Foundry Co.*, 88 B.R. 891, 894 (Bankr. E.D.Wis.1988); *In re Yancey*, 46 B.R. 621, 624 (Bankr.E.D.Pa.1985). The Court has not located any case discussing the minimum pleading of fraud with particularity level required in a Section 1228(d) debt discharge action or a Section 1230 confirmation revocation context. Chapter 11 case law addressing the fraud pleading level required to revoke a confirmed plan exists, but the cases provide limited insight because the courts struggle with the degree of fraud required to be shown prior to a Section 1106(a)(3) investigation being ordered. *In re TM Carlton House Partners, Ltd.*, 110 B.R. 185, 190 (Bankr.E.D.Pa. 1990), *aff'd*, 1990 WL 44698 (E.D.Pa.1990). Some courts require a showing of traditional fraud on the court, while others demand something more specific to engage Section 1202(b)(2). *Id.* At minimum, more than a vague statement of fraud is required to prevail in a revocation of confirmation hearing. *In re Crusader Oil Refining Corp.*, 47 F.Supp. 873, 874 (D.N.J.1942).

Understandably, Trustee seeks a 2004 examination to ferret out circumstances of a possible fraudulent act, if, for no other reason, than to ensure statutory Trustee duties are completely accomplished, since a Standing Trustee may be surcharged if statutory duties are breached. *In re Gorski*, 766 F.2d 723, 726–27 (2d Cir.1985). Unquestionably, Trustee serves a valuable and important role in implementing Chapter 12. However, the Court shall not permit a vague suspicion to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke or modify a confirmed plan or to deny debt discharge more than two years after confirmation. To allow unsubstantiated rumors, possibly started maliciously by dis-

gruntled entities, to upset a confirmed plan and deny discharge would sentence the debtor to an economic prison walled in by fear and disaster. The debtor would be forced to defend, at great legal and emotional expense, against any telltale allegation. Finality would prove elusive if the fraud exception could reverse confirmation or deny debt discharge on gossip alone.

■ Allegations that a debtor, more than 180 days into a confirmed plan yet prior to one year after the Section 1228 debt discharge hearing was held, committed fraud need be analyzed under a test which permits a party to bring on a case when badges of fraud exist and yet protect the debtor from suspicions of questionable veracity. The Court holds that a significant quantum of evidence, that being more than mere suspicion yet less than that entitling one to a judgment that fraud exists, must be shown before a 2004 examination of Debtors, in post-confirmation status, will be permitted. At least one court applied the significant quantum of evidence standard to a Section 1202(b)(2) request, and credit for the test's articulation goes to a case adjudicating a different area of bankruptcy law.

■ Though not denominated as such, *In re Graven*, 84 B.R. 630 (Bankr.W.D.Mo. 1988), applied the significant quantum of evidence test in adjudicating the merits of a Section 1202(b)(2) investigation request. In *Graven*, the creditors, seeking an order for the Chapter 12 Trustee to investigate alleged fraudulent trusts, submitted specific evidence of when the trusts were created, why they were fraudulent, how the fraud was perpetrated, where the trusts could be found, and who benefited. *Id.* at 631. The significant quantum of evidence test used in *Graven* provides a sound basis to examine Section 1202(b)(2) requests post-confirmation. While not expressly enunciated, the significant quantum of evidence proof test exists in case law adjudicating 11 U.S.C. § 1202(b)(2) requests.

The Court borrows the significant quantum of evidence standard language from *In re Metro Shippers, Inc.*, 63 B.R. 593 (Bankr.E.D.Pa.1986), which fashioned the test to adjudicate whether a creditor's election ballot should be invalidated. The standard has been modified to refer to a judgment of fraud rather than a judgment that a preferential transaction occurred.

*Metro* dealt with a debtor's attempt to bar a creditor, under 11 U.S.C. § 702(a)(2), from voting for a standing trustee because the creditor was the recipient of an alleged preference. *Id.* at 598–99. The debtor tried to prove a creditor received a preference and this taint barred the creditor from voting for a standing trustee. *Id.* A similarity exists to the instant matter because the debtor attempted to establish the creditor's impropriety without the luxury of possessing complete information. Likewise, Trustee seeks to ferret out possible fraudulent activity of the Grosses without the benefit of salient facts. *Metro* held that mere suspicion alone was insufficient to meet the burden. *Id.* Some evidence must be submitted to the court in order to protect against frivolous and baseless conjecture. The standard *Metro* utilizes properly balances the need to uncover and prosecute fraudulent activity while protecting the debtor, post-confirmation, against unsubstantiated suspicion.

Trustee's motion must survive the significant quantum of evidence test in order to be granted a Section 1202(b)(2) investigation. Trustee's basis for the 2004 examination is that, subsequent to confirmation, Sharlene Gross conveyed certain property to Tom Gross which was not in Debtors' schedules. A conclusory accusation that a debtor acted fraudulently is insufficient to qualify as fraud being pled with particularity. *DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D.Mich.1990). No specific details of intent to cheat or defraud, nor location of the deed transferring the alleged interest, were pled. Trustee's allegations fail to meet the specificity required for fraud to be pled.

■ The Federal Rules of Evidence apply in a bankruptcy court. Bankr.R. 9017. The Court decides matters based on evidence in the record and not on bald conclusory statements. Circumstantial evidence, known as badges of fraud, may be

introduced to prove an intent to cheat or commit fraud. *Ratchford v. Manchester Life and Casualty Management Corp.,* 679 F.2d 741, 745 (8th Cir.1982). The hearing record lacks any evidence of an alleged fraud. No evidence was introduced to refute the Debtors' claim that no fraud occurred. Mere suspicion that a debtor engaged in fraudulent conveyance of property, without any evidence presented, such as a deed, a Register of Deed's document, or a witness, does not justify a Section 1202(b)(2) investigation. Trustee has not pled nor proven fraud by a significant quantum of evidence.

Although Trustee did not expressly allege fraud, the procedural defect could be cured by allowing Trustee to amend his motion or by a reconsideration. *TM Carlton House,* 110 B.R. at 190. The Court now addresses whether the Trustee should be instructed to amend his pleadings to allege fraud with particularity in light of the Trustee's duty to investigate.

■■■■■ Section 1106(a)(3) and (4) directs the investigation in accord with the court's order, and the report is to be filed as soon as practicable. Statutory language instructing an early filing of an investigation report and plan confirmation posturing contemplate a primarily pre-confirmation investigation responsibility of the Trustee. Pre-confirmation investigations efficiently locate situations of omitted assets or transactions which can be dealt with prior to confirmation. Thus, a merry-go-round plan confirmation phenomenon, where the absent-minded debtor who inadvertently failed to list an asset which could lead to plan revocation and reformulating a new plan for subsequent confirmation, or denial of debt discharge after the plan has been completed, is generally avoided. Moreover, the Trustee-sought 2004 examination is generally a pre-confirmation discovery tool, and, only in a narrow context, may the 2004 examination be used post-confirmation. *Cinderella,* 93 B.R. at 377. Examination is limited to issues the court still may entertain. *Id.* While a 2004 examination may be narrowly used post-confirma-

tion, such examination is not justified on the evidence presented at this hearing.

■■■■ After considering an alleged fraudulent transfer of an unscheduled asset, along with the 180–day revocation of confirmation statute of limitations in Section 1230(a) and debt discharge under Section 1228(d), the Court holds that a Chapter 12 Trustee is not under a statutory duty to investigate and pursue rumors of debtor misbehavior more than 180 days post-confirmation. Support for the Court's holding is found in: the 180–day statute of limitations prohibiting revocations of confirmed plans absent fraud; finality; a need to keep scandalous rumors from causing the debtor needless defense costs; the 2004 examination being primarily a pre-confirmation tool; a chance to secure a detailed examination by the Trustee prior to confirmation, coupled with a 180–day grace period from the date of confirmation to ferret out fresh evidence, permits ample opportunity to discover misconduct; the ability for a party in interest to object to a discharge at the completion of a Chapter 12 plan; and a bankruptcy court's statutory discretion in determining cause warranting an investigation and in defining the investigation's scope.

Trustee's exuberance in administering cases under his charge is laudable, but the Trustee's duties must be analyzed within the scope of the overall Bankruptcy Code and a case's status lest Trustee's limited resources be exhausted, thereby inhibiting sound administration over all Chapter 12 cases. The Bankruptcy Code girds the Trustee with numerous powers and duties. The extent of the powers and duties is not infinite. Trustee is not burdened with the duty to prove all matters in a Chapter 12 case. *See In re Kuhlman,* 118 B.R. 731 (Bankr.D.S.D.1990). Because Trustee has no duty to investigate alleged fraudulent conduct more than 180 days after confirmation of the plan the Grosses have made proper payments under, and for other reasons enunciated above, the Court finds no compelling reason to order Section 1202(b)(2)'s duty on the Trustee. The Trustee will not be instructed to amend.

## CONCLUSION

Section 1202(b)(2) places a duty on the Chapter 12 Trustee to investigate the debtor with court approval and upon cause. The allegation that a debtor is engaged in fraudulent activity constitutes cause to investigate. The scope of the Trustee's duty to investigate must be considered with the debtor's case's status. The Trustee's investigation of a debtor is primarily intended for pre-confirmation use, and the Trustee's authority to investigate is limited post-petition. Where a confirmed plan for less than 180 days exists, revocation can only occur if fraud exists. A Trustee has no duty to request an investigation of a debtor's activities where more than 180 days elapsed since the plan was confirmed. Furthermore, a debtor is not subject to a 2004 examination after debtor's plan has been confirmed unless the movant first establishes fraudulent activity by a significant quantum of evidence, that being more than a mere suspicion yet less than that entitling one to judgment that fraudulent activity exists. The Court will enter an appropriate order denying and dismissing the motion for a 2004 examination.