**In re Bobby Noah GRAVEN & Millie Ann Graven, Debtors.**

**Bankruptcy No. 87–04885–S–2–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

May 23, 1989.

---

James R. Doran, Springfield, Mo., Samuel Johnson, Riverdale, Ga., for debtors.

Thomas J. O'Neal, Springfield, Mo., for trustee.

Rick Fink, Chapter 12 Trustee.

Thomas J. Carlson, Springfield, Mo., for Boatmen's Mountain Grove Nat. Bank.

Gary A. Powell, Springfield, Mo., for Farm Credit.

Mark Fitzsimmons, Springfield, Mo., for Mercantile Wright County Bank.

MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtors filed for relief under Chapter 12 on November 12, 1987. Their plan was duly filed and a confirmation hearing scheduled for March 2, 1988. Also sched-

uled were objections thereto. On March 2, 1988, a Motion for Investigation by the Chapter 12 Trustee was filed. The Court announced from the Bench at the conclusion of the hearing that it would order an investigation and did so in its Memorandum Opinion of March 23, 1988, 84 B.R. 630 (1988). The Trustee conducted an extensive and exhaustive investigation, filed reports, and a hearing was set on January 24, 1989. At the start of that hearing, debtors filed a Motion For Dismissal and the assembled creditors, as well as the Trustee, objected orally, subsequently filing assorted motions to dismiss with sanctions, and/or to convert. Hearing was scheduled thereon on April 10, 1989, parties heard, and the matter is now submitted.

The Court believes that there are two issues:

1. Does the Chapter 12 Trustee's investigation establish fraud on the part of the debtors?

2. If so, is a debtor's right to dismiss at any time under 11 U.S.C. § 1208(b) subject to the court's ability to convert to Chapter 7 under 11 U.S.C. § 1208(d), or must the court dismiss no matter what the circumstances?

Since the second issue cannot come into play unless fraud is found, these two items will be discussed in that order.

### FRAUD

On or about January 16, 1985, debtor Bobby N. Graven incorporated a Missouri corporation, titled Graven Auction Company, Inc. He was the sole incorporator, the president and one of two directors of the new entity. He held all the issued stock. The other director was Joanne Lashua who was also the secretary of the corporation. She was an employee of Bobby N. Graven. She resigned post petition and her whereabouts are unknown. On or about January 16, 1985, Bobby N. Graven conveyed eight tracts of real estate to the corporation. All of the conveyances were by warranty deed executed by Bobby N. Graven. Approximately one year later (January of 1986), debtor Millie A. Graven executed her warranty deeds on the same properties to the corporation.[1] There was no monetary consideration paid by the corporation to either of the debtors. A schedule is attached hereto showing the item of realty, the purported value, the date of each deed, the notary public involved and the date the deed was recorded.

On January 1, 1986, Bobby N. Graven and Millie A. Graven executed a bill of sale to Graven Auction Company, Inc. covering 169 head of Holstein and Brown Swiss dairy cattle, 5 motor vehicles, 4 tractors, and all the equipment that comprised their dairy operation. They subsequently leased all of said property back from Graven Auction Company, Inc. and at all times between January 1, 1986, and March of 1988, when they sought confirmation, were in full control and possession of all of said personalty.[2] No consideration was paid for the bill of sale. Debtors have never set a value on said property. Debtors now maintain the lease was terminated in November of 1988 and refuse to answer questions about Graven Auction Company, Inc., or what happened to said personal property.

In addition to these specific items, it appears that debtors were owners of a substantial number of promissory notes, deeds of trust, and accounts receivable, which, although not easily traceable, were assigned to Graven Auction Company. Also there is the so called "Manes Farm" which was transferred to the corporation and then back to debtors just prior to bankruptcy.

On January 1, 1986, debtor Bobby N. Graven transferred all of the outstanding shares of the common capital stock of Gra-

---

1. Mo.R.S. 474.150(2) deems any conveyance of real estate by a married person to be in fraud of the marital rights of a surviving spouse.

2. Bringing into play Mo.R.S. 428.080, which would strongly suggest that the purported transfer and alleged leaseback was void as to creditors of debtors and that same was still property of the estate.

ven Auction Company to Bobby F. Graven, Trustee for the Bobby N. Graven Irrevocable Trust. The stated consideration was $1.00 and natural love and affection. At the same time 282 shares of the common capital stock of Graven Realty, Inc., another corporation controlled by debtor Bobby N. Graven, was transferred to the same trustee for the same trust for the same identical consideration, or absence thereof. It would appear that this is all the stock of said corporation except for 18 shares. The stated beneficiaries of the irrevocable trust are: Bobby F. Graven, Daniell N. Graven and Gayle A. Graven. The beneficiaries of the irrevocable trust are the children of Bobby N. Graven and Millie A. Graven. Bobby N. Graven retained the power to vote the stock in the two corporations during his life.

Bobby F. Graven, the stated trustee, testified that he had received no money, managed no assets, done nothing in regard to the two corporations or as to the assets the two corporations purportedly owned. He further testified that his father, debtor Bobby N. Graven, took care of all that. This was at the hearing in March of 1988, some two years after the transfers to the trust.

The evidence at the first hearing showed that in January of 1985, Pillsbury Company had obtained a substantial judgment against debtor Bobby N. Graven, and that debtors had substantial debts in 1985.

Moving next to the schedules and statement of affairs filed by debtors, the following items are of interest. Item 4 from Statement of Debtor–In–Possession, File Document # 8, "There are no leases by Debtor". This is signed by both debtors and is patently false if they were leasing the dairy herd and equipment. Likewise in Item 17 of the Statement of Affairs, debtors list a $70.00 per month rental to Graven Realty, Inc., but do not list the lease of 169 head of dairy cattle, the motor vehicles, the tractors and all the dairy equipment. In the first operating report filed December 10, 1987, Document # 10, under Cash Re-

ceived the debtors show $1,675.70 received from 3 cows sold 11/11/87. This was after the alleged transfer and leaseback of all the milk cows, and yet debtors received these funds. Debtors transferred the Oklahoma property (or at least the mineral rights thereto) after filing.

There are other matters, as set out in the reports of investigation of the Chapter 12 Trustee, such as the alleged termination of the lease on the personalty without court approval, the alleged return of all said property to the Trust (or its corporation), the refusal to answer any questions about the corporate affairs, etc., but they merely fill in the background of an already clear pattern of deliberate fraud perpetrated with the intent to hinder, delay and defraud the creditors of the debtors. Further as shown by the report of the Trustee, although the transfers were purported to take place in 1985 and 1986, the recording dates establish that certain of said transfers were not completed until February of 1987, well within one year of the filing of the petition.

## DISMISSAL VERSUS CONVERSION

Since the Court has found that debtors did commit fraud, it must consider the second issue framed above, i.e., must the Court dismiss or may it convert? Debtors want to dismiss. Creditors want to convert. 11 U.S.C. § 1208(b) and (d) contain the two provisions which are apposite and apparently opposite as regards the divergent desires of the parties. As per Lexis and Westlaw, there are no reported cases interpreting which is controlling under Chapter 12, except one recent case from North Carolina. However, there are some interesting parallels found under 11 U.S.C. § 1307(b) and (c). Section 1208(b) and § 1307(b) are identical except for the inclusion of the reference to § 1208 in the latter. Section 1208(d) and § 1307(c) are not identical but at least in the pertinent parts are extremely close. In both § 1208 and § 1307, the debtor's right of dismissal is mandated by the direction to the court that

it "shall dismiss" while the right of a party in interest to effect a conversion is couched in the permissive power of the court, i.e., the court "may convert". It is upon this semantic difference that debtors first rely in their contentions. They now seek to fold their tent and silently steal away, perhaps leaving behind all but a few of the larger and more vigilant creditors who may choose to follow the contorted and twisted path of transfers without consideration first to a shell corporation and then to a family trust.

The Court declines to agree with this approach. The first reason is philosophical. Bankruptcy laws have always had as their intent the protection and/or rehabilitation of honest debtors. They are not and have not been intended to shield those parties who have attempted to hinder, delay or defraud their creditors. Second, although this Court recognizes and appreciates the grammatical difference between "shall" and "may", other courts have stated:

> Words imparting permission may be read as mandatory and words imparting command may be read as permissive when such construction is made necessary by evident intention or by the rights of the public. *Sutherland Statutory Construction*, Sards 4th Edition, Volume 3A, pg. 209.

See *Jennings v. Suggs*, 180 Ga. 141, 178 S.E. 282 (1935), *Ewing v. Union Central Bank*, 254 Ky. 623, 72 S.W.2d 4 (1934). If such an interpretation is permissible, then this is a case where it is appropriate. Debtors listed eleven unsecured creditors, six of whom have claims ranging from $622.00 to $3,645.27. These parties can hardly afford to pursue their rights in any forum other than the bankruptcy proceedings. In bankruptcy the Trustee can pursue the assets of the estate for the benefit of all the creditors—large and small—secured and priority—alike.

Third, at least one other bankruptcy court has recognized that the apparent mandate of 11 U.S.C. § 1208(b) may be tempered at least by delay. In the very recent case of *In re Tyndall*, 97 B.R. ·266 (Bkrtcy.E.D.N.C.1989), Bankruptcy Judge A. Thomas Small refused the dismissal requested by the Chapter 12 debtors until after the Chapter 12 Trustee had liquidated the collateral securing the debt to FmHA. Judge Small reasons that 11 U.S.C. § 1307(b) does not mandate any time frame within which it must be ruled by the Court and that the Court may rule upon other motions by other parties while the debtor's motion for dismissal is pending. Judge Small rules that the same interpretation should be applied to § 1208(b) and cites *3 Norton Bankruptcy Law and Practice*, Section 83.09 (1987).

This Court agrees with Judge Small and also with Bankruptcy Judge Ray Reynolds Graves in *In re Vieweg*, 80 B.R. 838 (Bkrtcy.E.D.Mich.1987). In that case, Judge Graves held that the court could convert a pending Chapter 13 case under § 1307(c) to a Chapter 7 case over the objection of a debtor who had filed a motion to dismiss under § 1307(b). Judge Graves preferred an analysis of § 1307(b) and (c) that afforded reasonable meaning to both sections. To quote Judge Graves:

> "To say Congress intended that a debtor could thwart a creditor's opportunity even to present his proofs by filing a motion to dismiss, thus relegating the creditor to pursuit of his remedies in yet another forum, a state court, defies reason." (*Vieweg*, id., (l.c. 841)).

In the same vein, see *In re Tatsis*, 72 B.R. 908 (Bkrtcy.W.D.N.C.1987) wherein Bankruptcy Judge Marvin R. Wooten converted a Chapter 13 proceeding to a Chapter 7 even though debtors had filed a motion to dismiss under § 1307(b). Of course, in the *Tatsis* case, the debtors withdrew said motion to dismiss, but the principles discussed in said case are pertinent. Nor has the Court ignored the cases that have held to the contrary, i.e., that a § 1307(b) motion by a debtor to dismiss is automatic and overrides other considerations; e.g. *In re Looney*, 90 B.R. 217 (Bkrtcy.W.D.Va.1988)

and earlier cases cited therein. Contrary to what Chief Bankruptcy Judge Pearson opines in that case, this Court believes that there is a common purpose behind subsections (b) and (c) of § 1307. The purpose is to distinguish between the case of the "honest debtor" who for whatever reason chooses to dismiss and is permitted to do so and the debtor who has sought to use the bankruptcy court as a subterfuge rather than a refuge. It is only where there has been a showing of severe impropriety on the part of the debtor that § 1307(c) should or could be invoked.

Finally, there is precedent in the Western District of Missouri for holding that fraud vitiates a voluntary dismissal of a Chapter 13 proceeding. In the case of *Wesley Medical Center v. Wallace*, 57 B.R. 364 (W.D.Mo.1985), the Honorable Scott O. Wright, Chief Judge, vacated a dismissal granted in a Chapter 13 upon the motion of the debtor where fraud had occurred. This Court believes that if fraud can invalidate an order of dismissal under § 1307(b), fraud can allow a court to convert a Chapter 12 to a Chapter 7 when the public good requires it.

This Court has never, in its brief three plus years on the bench, heretofore refused any motion to dismiss on the part of a debtor under § 1307(b) or § 1208(b). This Court has never, in that same brief tenure, seen conduct of the kind exposed in this case on the part of a Chapter 13 or Chapter 12 debtor. The Court has been unable to discover any other reported case construing either the Chapter 13 issue or the Chapter 12 issue in the Western District of Missouri. The Court freely admits that the view it adopts follows the minority view. But somewhere there must be a starting point in determining how the law in regard to Chapter 12 will evolve. For whatever value then, in the ultimate decision as to the law in this district, this Court shall opt to afford the honest Chapter 12 debtor the unfettered right to dismiss at any time, but shall not reward a debtor it believes has chosen to abuse the legal process and the bankruptcy process by both prepetition and postpetition misconduct and fraud.

The Motion to Convert the proceedings to Chapter 7 is GRANTED. The Motion to Dismiss becomes moot as a result thereof. The United States Trustee is directed to appoint a Trustee.

SO ORDERED this 23rd day of May, 1989.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

| ITEM | ESTIMATED VALUE | PARTY CONVEYING AND DATE | NOTARY PUBLIC | DATE OF RECORDING | GRANTEE |
|---|---|---|---|---|---|
| House & 7 acres Seymour, Mo. | $125,000.00 | BNG–1–16–85 MAG–1–1–86 | Lloyd Hanna Joanne Lashua | 2–1–85 2–18–87 | Graven Auction Co. |
| House & 2 acres Seymour, Mo. | $ 49,000.00 | BNG–1–16–85 MAG–1–1–86 | Lloyd Hanna Joanne Lashua | 2–1–85 2–18–87 | Graven Auction Co. |
| House in Mountain Grove | $ 25,000.00 | BNG–1–16–85 MAG–1–1–86 | Joanne Lashua Joanne Lashua | 2–4–85 2–18–86 | Graven Auction Co. |
| 2 Office Bldgs. Mansfield, Mo. | $ 72,000.00 | BNG–1–16–85 MAG–1–16–86 | Joanne Lashua Joanne Lashua | 2–4–85 2–18–86 | Graven Auction Co. |
| House in Mountain Grove | $ 35,000.00 | BNG–1–16–85 MAG–1–1–86 | Joanne Lashua Joanne Lashua | 2–4–85 2–18–86 | Graven Auction Co. |
| 251 Acres Mountain Grove | $ 50,000.00 | BNG–1–16–85 MAG–1–1–86 | Joanne Lashua Joanne Lashua | 2–6–85 2–18–87 | Graven Auction Co. |
| 110 Acres Cabool, Mo. | $ 60,000.00 | BNG–11–15–86 MAG–11–15–86 | Joanne Lashua Joanne Lashua | 2–18–87 2–18–87 | Graven Auction Co. |
| 40 Acres Oklahoma | $ 60,000.00 | BNG–11–10–86 BNG–11–17–87 | Joanne Lashua Joanne Lashua | 11–10–86 11–20–87 | Graven Auction Co. |