**In re Milton GOZA.**

**Bankruptcy No. 9000611WC.**

United States Bankruptcy Court,
S.D. Mississippi, W.D.

May 4, 1992.

Robert S. Murphree, Jackson, Miss., for debtor.

Harold J. Barkley, Jr., Terre Vardaman, Jackson, Miss., Chapter 12 Trustee.

## MEMORANDUM OPINION

EDWARD ELLINGTON, Chief Judge.

The Court has before it two competing motions filed by the Chapter 12 Trustee and the Chapter 12 Debtor. The Trustee seeks an order compelling the Debtor to provide the court with an accounting of both his assets and activities for the period of time that he has been a debtor-in-possession. The Debtor asks that he be allowed to voluntarily dismiss his case, asserting that he has an absolute right to dismissal prior to making an accounting. The issue before the Court is whether a chapter 12 debtor has an absolute right to voluntary dismissal of his case pursuant to 11 U.S.C. § 1208(b) when the trustee opposes the dismissal pending the outcome of an accounting by the debtor.

The Court has considered the motions, responses thereto, testimony of witnesses, and briefs of counsel. Because of the relative newness of chapter 12 and the paucity of judicial opinions on the subject, the Court has withheld issuance of an opinion in this matter until two cases pending in other courts became final. One of the cases upon which this Court relies arose in this circuit, *Foster v. North Texas Production Credit Association (In Re Foster),* 121 B.R. 961 (Bankr.N.D.Tex.1990), *aff'd,* 945 F.2d 400 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 972, 117

L.Ed.2d 136 (1992). The other case is *Graven v. Fink (In Re Graven)*, 936 F.2d 378 (8th Cir.1991), *aff'g the district court's affirmance of the bankruptcy court decision sub. nom. In Re Graven*, 101 B.R. 109 (Bankr.W.D.Mo.1989).

It is the opinion of the Court that the Debtor does not have an absolute right of dismissal, and that dismissal will be delayed until he provides this Court with an accounting of his assets and activities during the time that he has been a debtor-in-possession.

## FINDINGS OF FACT

On February 26, 1990, Milton Goza and his wife, Diane Goza, filed a petition for relief under Chapter 12 of the Bankruptcy Code.[1] At her request, Diane Goza was later dismissed from the case when it was established that she was not personally liable on a large secured debt, and had no real need to be in bankruptcy.

A chapter 12 debtor is required to file a proposed plan of reorganization no later than 90 days after filing a petition for relief, but the 90 day period may be extended by the court.[2] Because of a two day extension caused by a Sunday and Memorial Day, the Debtor's plan was due to be filed no later than May 29, 1990. The plan was not filed by the deadline, and on May 30, 1990, the Debtor filed a motion requesting until June 29, 1990, to file his plan. The Court granted the extension, and the plan was filed on July 2, 1990.

Both prior and subsequent to the filing of the plan, the Debtor and certain creditors filed various motions dealing with obtaining crop loans, valuation of collateral, restructuring of indebtedness and the sale of property. As a result of ongoing activities and negotiations between the Debtor and certain of his large creditors, no confirmation hearing on the proposed plan was held.

On November 13, 1990, the Chapter 12 Trustee filed his motion seeking an accounting. In the motion the Trustee alleges that he is without knowledge of the assets of the estate and that the failure of the Debtor to account for assets is prejudicial to the creditors of the estate.

Two days after the Trustee filed his motion to compel an accounting, the Debtor moved to dismiss his chapter 12 case pursuant to 11 U.S.C. § 1208(b).

On December 10, 1990, the Debtor and his major secured creditor, the Farm Credit Bank of Texas, agreed to the entry of an order compromising and settling the bank's claim of approximately $275,000.00, which was secured by 210 acres of farm land, for the sum of $145,000.00.

The hearing on the motion to dismiss and motion for an accounting was relatively brief. Mrs. Terre Vardaman, a member of the staff of the Chapter 12 Trustee, testified about the procedural history of the case and the various creditors in the case. Mr. Goza basically testified that he had settled with his various creditors and now wanted to dismiss his case. He further testified that he obtained the $145,000.00 necessary to settle with the Farm Credit Bank of Texas by borrowing it from another farming entity with which he was involved. The Debtor admitted that he did not obtain court permission to borrow the money.

## CONCLUSIONS OF LAW

In asserting his absolute right to dismiss the Debtor relies on Section 1208(b) of the Bankruptcy Code, which provides:

**11 U.S.C. § 1208. Conversion or dismissal.**

(b) On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

He also cites 5 *Collier on Bankruptcy*, § 1208.01[2] at 1208–3 (15th ed. 1991) which states in part:

Section 1208(b) grants the debtor an absolute right to dismiss a chapter 12

---

**1.** Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

**2.** 11 U.S.C. § 1221.

case at any time unless the case was converted to chapter 12 from chapter 7 or chapter 11. As with the debtor's absolute right to convert to chapter 7, the right to dismiss may be exercised at any time, even if the debtor has been removed from possession or if a plan has been confirmed. Any purported waiver of the right to dismiss is explicitly made unenforceable by section 1208(b). The right to dismiss is similarly consistent with the philosophy that a debt adjustment under chapter 12 is a voluntary process.

The Trustee acknowledges that a chapter 12 is a voluntary process and that the Debtor cannot be forced to use future earnings to fund a plan. Nevertheless, he asserts that in light of other code sections and case law, any dismissal should be delayed until the Debtor has performed certain obligations placed on him by the code.

Upon the filing of a chapter 12 petition for relief, the Bankruptcy Code confers certain rights and imposes certain duties upon the debtor, as set forth in sections 1203, 1106 and 704 of the code which provide in relevant part as follows:

**11 U.S.C. § 1203. Rights and powers of debtor.**

Subject to such limitations as the court may prescribe, a debtor in possession shall have all the rights, other than the right to compensation under section 330, and powers, and shall perform all the functions and duties, except the duties specified in paragraphs (3) and (4) of section 1106(a), of a trustee serving in a case under chapter 11, including operating the debtor's farm.

**11 U.S.C. § 1106. Duties of trustee and examiner.**

(a) A trustee shall—

(1) perform the duties of a trustee specified in sections 704(2), 704(5), 704(7), 704(8), and 704(9) of this title;

(2) if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title;

. . . .

(5) as soon as practicable, file a plan under section 1121 of this title, file a report of why the trustee will not file a

plan, or recommend conversion of the case to a case under chapter 7, 12 or 13 of this title or dismissal of the case;

(6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information; and

(7) after confirmation of a plan, file such reports as are necessary or as the court orders.

**11 U.S.C. § 704. Duties of trustee.**

The trustee shall—

(2) be accountable for all property received;

. . . .

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

. . . .

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

Likewise, sections 1202, 1106 and 704 of the code enumerate certain duties which are placed upon the chapter 12 trustee:

**11 U.S.C. § 1202. Trustee.**

(b) The trustee shall—

(1) perform the duties specified in sections 704(2), 704(3), 704(5), 704(6), 704(7), and 704(9) of this title;

(2) perform the duties specified in section 1106(a)(3) and 1106(a)(4) of this title if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders;

(3) appear and be heard at any hearing that concerns—

(A) the value of property subject to a lien;

(B) confirmation of a plan;

(C) modification of the plan after confirmation; or

(D) the sale of property of the estate;

(4) ensure that the debtor commences making timely payments required by a confirmed plan; and

(5) if the debtor ceases to be a debtor in possession, perform the duties specified in sections 704(8), 1106(a)(1), 1106(a)(2), 1106(a)(6), 1106(a)(7), and 1203.

**11 U.S.C. § 1106. Duties of trustee and examiner.**

(a) A trustee shall—

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

**11 U.S.C. § 704. Duties of trustee.**

The trustee shall—

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

. . . .

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party interest;

. . . .

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

As previously quoted, subsection (b) of 11 U.S.C. § 1208 contains language concerning the debtor's right to dismiss a chapter 12 case. However, subsection (d) of the same code section provides that the court may convert a case filed under chapter 12 to a liquidation case under chapter 7 upon a showing that the debtor has committed fraud in connection with the case.

One of the cases upon which the Court relies, *Foster v. North Texas Production Credit Association (In Re Foster)*, 121 B.R. 961 (Bankr.N.D.Tex.1990), *aff'd*, 945 F.2d 400 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 136 (1992), involved a chapter 12 case in which a creditor sought conversion of the case to a liquidation under chapter 7 pursuant to § 1208(d), and the debtor sought dismissal of his case pursuant to § 1208(b).

Upon finding that the debtor had committed fraud, the bankruptcy court denied the dismissal sought by the debtor and converted the case to a chapter 7 proceeding. On appeal the district court affirmed, stating:

The Court agrees with the reasoning set forth in the case of *In re Graven*, 101 B.R. 109 (Bankr.W.D.Mo.1989). When the facts show that the debtors have abused the legal process and the bankruptcy process through fraud, the bankruptcy court has the authority to convert a chapter 12 proceeding to a chapter 7 liquidation, even though the debtors have

filed a motion to dismiss the chapter 12 proceeding. The debtors in the case *sub judice* have used the bankruptcy proceedings as a subterfuge and as a "shell game," reflecting a pattern of intent to hinder, delay and defraud creditors.

*In re Foster,* 121 B.R. at 961.

On appeal to the Fifth Circuit, the district court was affirmed without a published opinion and certiorari denied by the United States Supreme Court on January 27, 1992.

The opinion of *In re Graven,* 101 B.R. 109 (Bankr.W.D.Mo.1989), cited with approval in *In re Foster,* involved a case where the chapter 12 trustee had conducted an extensive investigation of the activities of the debtors and had filed reports with the court. On the day of the scheduled hearing regarding the trustee's reports, the debtors filed a motion to dismiss their case. The creditors who were present for the hearing along with the trustee objected to the debtors' motion, and filed motions to convert to chapter 7 or to dismiss with sanctions.

The hearing was then reset, and after a trial the bankruptcy court found that the debtors had engaged in a "clear pattern of deliberate fraud perpetuated with the intent to hinder, delay and defraud the creditors of the debtors." *In re Graven,* 101 B.R. at 111.

Upon finding that the debtors engaged in fraudulent conduct, the court then went on to consider the second issue of whether it was compelled to dismiss the case or whether it could convert the case to a chapter 7. The court concluded that it did not have to dismiss the case on the request of the debtor, and ordered the case converted to a chapter 7.

In reaching its decision, the court recognized the difference between the mandatory language of "shall dismiss" and the permissive language of "may convert". However, the court was of the opinion that bankruptcy laws have always been for the protection and rehabilitation of honest debtors and not to shield those parties attempting to hinder, delay or defraud their creditors.

The bankruptcy court also found that the case was one appropriate for application of the following principle of statutory construction quoted from *Sutherland Statutory Construction,* Sards 4th Edition, Volume 3A, page 209, to-wit:

Words imparting permission may be read as mandatory and words imparting command may be read as permissive when such construction is made necessary by evident intention or by the rights of the public.

The court also relied upon the case of *In re Tyndall,* 97 B.R. 266 (Bankr.E.D.N.C. 1989) where the bankruptcy judge delayed the dismissal requested by the chapter 12 debtors until after the chapter 12 trustee liquidated certain collateral for the benefit of the FmHA pursuant to an agreed modified plan. In so doing, the court reasoned that although the debtor may have an absolute right to dismiss, the court has authority to delay the entry of dismissal to protect rights of creditors gained "in reliance on the pendency of the bankruptcy." *In re Tyndall,* 97 B.R. at 268.

As previously noted, the *Graven* case was appealed, and the opinion of the bankruptcy court was affirmed by the district court in an unpublished opinion, and by the Eighth Circuit Court of Appeals in *Graven v. Fink (In re Graven),* 936 F.2d 378 (8th Cir.1991).

In its opinion the Eighth Circuit focused on the potential conflict in §§ 1208(b) and (d). The Court held that it must look not only to the express language of the code, but also to the overall purpose of the code. The purpose of the Bankruptcy Code is to provide a fresh start for debtors, but it is not available to all. It is limited to the "honest, but unfortunate debtor." The court then went on to say:

Recognizing an absolute right to dismissal under section 1208(b) would also completely undermine the express authority Congress granted to the courts under section 1208(d) and would render that subsection useless.

. . . .

We conclude that the broad purpose of the bankruptcy code, including Chapter

12, is best served by interpreting section 1208(d) to allow a court to convert a case to Chapter 7 upon a showing of fraud even though the debtor has moved for dismissal under subsection (b). Our holding on the interaction of subsections (b) and (d) does not conflict with the express language of subsection (b). Nothing in subsection (b) requires that a court act immediately upon a debtor's request for a voluntary dismissal. *See In re Tyndall,* 97 B.R. 266, 268 (Bankr. E.D.N.C.1989) (a court may delay action on a section 1208(b) motion while it considers motions by other parties.)

*In re Graven,* 936 F.2d at 385–86.

The court also quoted with approval from the previously cited case of *In re Foster,* 121 B.R. at 961.

In the case at bar there has not been a showing of fraud at this point. However, it is clear from an overall reading of the code and the previously quoted code sections, that significant benefits and protection are obtained by a debtor upon the filing of a chapter 12 petition. Two prime benefits are that any hostile actions by creditors are immediately stopped by the automatic stay provisions of § 362 and the debtor can continue to have practically unfettered, day-to-day control over his crops, equipment, livestock and other assets while he supposedly prepares his chapter 12 plan of reorganization. The potential for abuse by the debtor during this period is almost unlimited for all practical purposes.

However, as noted in the previously quoted code sections, certain limited responsibilities are placed on the debtor, and likewise, certain rights are given to the chapter 12 trustee. Specifically, the debtor shall be accountable for all property received; furnish such information concerning the estate's administration as is requested by a party in interest; and, file with the court and with the United States trustee periodic reports and summaries of the operation of the business, including a statement of receipts and disbursements, and such other information as the United States Trustee or the court requires.

It is also clear from the code sections that the chapter 12 trustee has a right and duty to investigate and report on the activities of the debtor.

This Court agrees with the general rational of the Eighth Circuit in the *Graven* case that the right of dismissal must be viewed in the overall context of the code. The Debtor reaped significant benefits by the simple act of filing his petition, and he has enjoyed a safe harbor for many months. When the Trustee demanded an accounting of his activities almost nine months after his filing, the Debtor immediately sought to dismiss his case and to thus totally subvert the duties and responsibilities placed upon him by the same code to which he so fervently clings.

This certainly was not the intent of Congress and if it became the holding of the courts, chapter 12 would quickly change from an avenue for the "honest, but unfortunate debtor" seeking to get a fresh start to a frequently traveled thoroughfare for the unscrupulous seeking to hinder, delay and defraud their creditors.

For these reasons, the dismissal of the Debtor will be delayed until he has filed with the Court and served copies on the United States Trustee and the Chapter 12 Trustee, a report and summary of the operations of his business, including a statement of receipts and disbursements, from the time he filed his petition in bankruptcy through April 30, 1992. The United States Trustee and the Chapter 12 Trustee will be allowed fifteen (15) days from the time the report is served on them to respond. If no response is filed, an order of dismissal may be entered by the Court without further hearing.

SO ORDERED.