## United States Bankruptcy Appellate Panel

### For the Eighth Circuit

_____

No. 14-6023

_____

In re: Paul Roma Dmitruk, also known as Pavel Roma Dmitruk, As surety for DPR
Auto Repair

*Debtor*

------------------------------

Julia A. Christians

*Trustee - Appellant*

v.

Paul Roma Dmitruk

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: September 3, 2014
Filed: September 15, 2014

_____

Before FEDERMAN, Chief Judge, SALADINO and SHODEEN, Bankruptcy Judges.

_____

FEDERMAN, Chief Judge

The Chapter 7 Trustee appeals from the Order of the Bankruptcy Court[1] overruling the Trustee's objection to the Debtor's claimed exemption in the portion of his state income tax refund which came from the Minnesota Education Credit, as "government assistance based on need" under § 550.37, subd. 14 of the Minnesota Statutes. For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

Debtor Paul R. Dmitruk filed a Chapter 7 bankruptcy case on April 26, 2013. At the time of filing, the Debtor, his wife, and three minor children lived on his $1,250 monthly income and $900 monthly food stamp allowance. He chose to claim Minnesota exemptions[2] and, in an amended Schedule B, he claimed exemptions in several separate components of his federal and state income tax refunds under § 550.37, subd. 14 of the Minnesota Statutes, as "government assistance based on need." The Chapter 7 Trustee objected to the exemptions, some of which the Bankruptcy Court allowed, and some of which the Court

---

[1] The Honorable Kathleen H. Sanberg, United States Bankruptcy Judge for the District of Minnesota.

[2] Bankruptcy debtors in Minnesota may choose either the federal exemptions or the exemptions provided under Minnesota and other federal law. *Manty v. Johnson* (*In re Johnson*), 509 B.R. 213, 215 (B.A.P. 8th Cir. 2014) (citing *Martin v. Bucher* (*In re Martin*), 297 B.R. 750, 751-52 (B.A.P. 8th Cir. 2003)).

denied.  This appeal involves only one component of the claimed exemptions:  the portion of the Debtor's 2013 state income tax refund for the Minnesota K-12 Education Credit in the amount of $1,357.  The Bankruptcy Court overruled the Trustee's objection and allowed the Debtor to claim the exemption under § 550.37, subd. 14.  The Chapter 7 Trustee appeals.

## STANDARD OF REVIEW

We review the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.[3]  The Bankruptcy Court's statutory interpretation is a question of law that is subject to *de novo* review.[4]  Likewise, the allowance or disallowance of an exemption is subject to *de novo* review.[5]

## DISCUSSION

The Debtor claimed his Minnesota Education Credit exempt under § 550.37, subd. 14 of the Minnesota Statutes.  That statute provides, in relevant part:

> **Subd. 14. Public assistance**. All government assistance based on need, and the earnings or salary of a person who is a recipient of government assistance based on need, shall be exempt from all claims of creditors including any contractual setoff or security interest asserted by a financial institution.  For the purposes of this chapter, government assistance based on need includes *but is not limited to* Minnesota family investment program, general assistance medical

---

[3] *Id.* at 214(citing *Addison v. Seaver* (*In re Seaver*), 540 F.3d 805, 809 (8th Cir. 2008)).

[4] *Id.* at 214-15 (citing *Graven v. Fink* (*In re Graven*), 936 F.2d 378, 384-85 (8th Cir. 1991)).

[5] *Id.* at 215 (citing *Drenttel v. Jensen-Carter* (*In re Drenttel*), 309 B.R. 320, 322 (B.A.P. 8th Cir. 2004)).

3

care, Supplemental Security Income, medical assistance, MinnesotaCare, payment of Medicare part B premiums or receipt of part D extra help, MFIP diversionary work program, work participation cash benefit, Minnesota supplemental assistance, emergency Minnesota supplemental assistance, general assistance, emergency general assistance, emergency assistance or county crisis funds, energy or fuel assistance, and food support. The salary or earnings of any debtor who is or has been an eligible recipient of government assistance based on need . . . shall, upon the debtor's return to private employment or farming after having been an eligible recipient of government assistance based on need, . . . be exempt from attachment, garnishment, or levy of execution for a period of six months after . . . all public assistance for which eligibility existed has been terminated. . . . . The burden of establishing that funds are exempt rests upon the debtor. . . .[6]

The statute does not specifically mention education credits in the list of examples of the types of government assistance which are exempt. However, the list is not exclusive, and so the question is whether the education credit portion of the tax refund fits within the Minnesota legislature's concept of "government assistance based on need."[7]

We have recently said, in addressing whether a Minnesota state property tax refund was exempt under § 550.37, subd 14:

When a debtor elects to exempt property pursuant to state statute, courts determine such eligibility by looking to state law. In Minnesota, the goal of statutory interpretation is to determine the intent of the legislature. When ascertaining legislative intent, courts interpreting Minnesota statutes may be guided by the presumptions detailed in Minn. Stat. § 645.17. That statute provides that "the legislature does not intend a result that is absurd, impossible of

_____

[6] Minn. Stat. § 550.37, subd. 14 (emphasis added).

[7] *In re Johnson*, 509 B.R. at 215 (citing *In re Tomczyk*, 295 B.R. 894, 896 (Bankr. D. Minn. 2003)).

4

execution, or unreasonable" and "the legislature intends the entire statute to be effective and certain." It is well-settled that exemption statutes must be construed liberally in favor of the debtor and in light of the purposes of the exemption.[8]

The Trustee asserts that the Bankruptcy Court erred in finding the Minnesota Education Credit was government assistance because: (a) the purpose of the Education Credit is not to provide relief for low income families; (b) treating the Education Credit refund as government assistance based on need leads to an unreasonable result; and (c) the language of the statute is clear that Education Credit refunds do not constitute government assistance based on need when compared to the payments and subsidies specifically listed in Minn. Stat. § 550.37 subd. 14. He also asserts that the caselaw does not support the Bankruptcy Court's decision.

The Trustee has concisely summarized the Minnesota Education Credit: The Minnesota Education Credit was enacted in 1997 and is currently codified in § 290.0674 of the Minnesota Statutes. It is a refundable credit of up to 75 percent of education-related expenses for each qualifying child in kindergarten through grade twelve, with a maximum credit of $1,000 per child. The $1,000 maximum for one child phases out at a rate of $1 for each $4 of income over $33,500, and the maximum for more than one child ($1,000 multiplied by the number of qualifying children) phases out at a rate of $2 for each $4 of income over $33,500. The credit is fully phased out when income reaches $37,500 for families with two qualifying children; when income reaches $39,500 for families with three qualifying children; at $41,500 for families with four qualifying children; and so on.

_____

[8] *Id.* at 215-16 (citations omitted).

5

Minnesota also allows a tax *deduction* (as opposed to a tax *credit*) for education related expenses of up to $2,500 for dependents in grades 7 to 12 and $1,625 for each dependent in kindergarten through grade 6.[9]

Eligible education expenses are the same for the deduction as they are for the credit, except that payment of nonpublic school tuition qualifies for the deduction, but does not qualify for the credit. Generally, eligible expenses for the credit include expenses related to transportation, textbooks, instructional materials, tutoring, academic summer school and camps, and up to $200 for computer or education related software.[10] The credit is fully refundable, meaning that, if an individual's Education Credit exceeds his or her tax liability, the excess is still paid to the individual in the form of a refund check.[11] In addition, parents may assign payment of the credit to participating financial institutions and tax-exempt foundations, and in effect, receive a loan that is paid directly to a third party provider of educational services and programs.[12] "This allows very low-income families to purchase educational products and services in anticipation of receiving

---

[9] Minn. Stat. § 290.01, subd. 19(b)(3).

[10] Minn. Stat. §§ 290.01, subd. 19(b)(3); 290.0674 subd. 1. *See also* Nina Manzi and Lisa Larson, *The K-12 Education Deduction and Credit: An Overview*, House Research Short Subjects (January 2014), found at http://www.house.leg.state.mn.us/hrd/pubs/ss/sseducdc.pdf .

[11] Manzi and Larson, *The K-12 Education Deduction and Credit: An Overview*, House Research Short Subjects (January 2014). *See also* Nina Manzi & Lisa Larson, *Income Tax Deductions and Credits for Public and Nonpublic Education in Minnesota,* House Research Department (September 2011) at 11, found at http://www.house.leg.state.mn.us/hrd/pubs/educcred.pdf.

[12] *Id.*

a credit when they file their tax return the following year, with the credit paid directly to the financial institution or foundation that accepted the assignment."[13]

As the Trustee points out, § 290.0674 does not have an express "purpose" section, and legislative history as to the purpose of that particular statutory provision is scant.[14]  In *In re Johnson*[15] and *In re Hardy*,[16] we looked at the characteristics of the different types of income tax refunds to determine whether the legislative purpose of the refunds was "based on need" under the plain and ordinary meaning of the concept.  In doing so, we approved the analysis in a prior Minnesota bankruptcy court case determining that the federal Earned Income Tax

---

[13] *Id.*

[14] Hence, the Trustee points to the preamble to the overarching Act enacted by the Minnesota legislature in 1997 dealing generally with education issues, including § 290.0674:

> An act relating to education; kindergarten through grade 12; providing for general education; special programs; lifework development; education organization, cooperation, and facilities; education excellence; academic performance; education policy issues; libraries; technology; state agencies; conforming and technical amendments; school bus safety; tax deduction and credit; appropriating money; amending Minnesota Statutes . . . .

*Education – K Through 12 – General Education, Special Programs, Technology, Libraries, Academic Performance, Bus Safety, Taxes*, 1997 Minn. Sess. Law Serv. 1st Sp. Sess. Ch. 4.

[15] *In re Johnson*, 509 B.R. 213 (B.A.P. 8th Cir. 2014).

[16] *Hardy v. Fink* (*In re Hardy*), 503 B.R. 722 (B.A.P. 8th Cir. 2013).

7

Credit due a debtor was exempt.[17]  Without the benefit of clearly-stated legislative purpose, the same principles apply here.

Primarily, in order to be exempt, the refund must be intended to "address the basic economic needs of low-income recipients."[18]  As outlined above, the Minnesota Education Credit at issue here is phased out at relatively low income levels, similar to the income thresholds applicable to the federal Earned Income Credit and the Minnesota Working Family Credit, which the Court in *Tomczyk* held fall within the § 550.37, subd. 14 exemption.[19]  In contrast, we have held that the Minnesota property tax refund is not "based on need" because it is available to people earning more than $100,000, and in some cases, people with unlimited income.[20]  Similarly, we held that the federal Additional Child Tax Credit was not "based on need" where it was available to individuals earning more than $75,000 per year and married individuals earning $110,000.[21]

---

[17] *In re Tomczyk*, 295 B.R. 894 (Bankr. D. Minn. 2003).

[18] *In re Johnson*, 509 B.R. at 218-19 (quoting *Burns v. Einess*, 2011 WL 5829323 at *5 (Minn. Ct. App. Nov. 21, 2011) (not reported)).

[19] *In re Tomczyk*, 295 B.R. 894.  By way of example, for the 2013 tax year, an individual's adjusted gross income must be less than $37,870 ($43,210 for married filing jointly) with one qualifying child to qualify for the federal Earned Income Tax Credit.  *See* http://www.irs.gov/pub/irs-pdf/p596.pdf at p. 17.   The Minnesota Working Family Credit tracks the federal EITC, so it is comparable as well.  *See Tomczyk*, 295 B.R. at 897, n. 3.

[20] *In re Johnson*, 509 B.R. at 217, 219.

[21] *In re Hardy*, 503 B.R. at 725.

The Trustee points to *Mueller v. Allen*,[22] where the United States Supreme Court was called upon to determine whether the Minnesota education tax *deduction* was unconstitutional because people could claim the deduction for tuition at parochial schools.[23] The Supreme Court there said that one of the reasons the deduction statute passed constitutional muster was that the tax deduction has "the secular purpose of ensuring that the state's citizenry is well-educated," as well as "assuring the continued financial health of private schools, both sectarian and nonsectarian."[24] The Trustee therefore argues that the purpose of both the deduction and the tax credit is to ensure education for the citizenry, not to provide assistance based on need.

Undoubtedly, giving children in Minnesota a quality education is one purpose of the Education Credit, as the Supreme Court said it was for the education deduction. But, the Supreme Court was not dealing with exemptions in *Mueller v. Allen*, nor was it dealing with the Education Credit, and so it was not called upon to determine whether the credit involved here is intended to assist low-income people obtain a quality education for their children.

The Trustee also relies on *Burns v. Einess*.[25] In that case, the appellant asserted that his wages were exempt from garnishment under § 550.37, subd. 14

---

[22] 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983) (analyzing the then-current statute, Minn. Stat. § 290.09(22), now codified at § 290.01, subd. 19b(3)).

[23] Note that, as mentioned above, in contrast to the deduction at issue in *Mueller v. Allen*, private school tuition is not a qualifying education expense for the Education Credit at issue here, so no one has asserted that the Education Credit violates the Establishment Clause of the First Amendment.

[24] 463 U.S. at 395, 103 S.Ct. at 3067.

[25] 2011 WL 5829323 (Minn. Ct. App. Nov. 21, 2011) (not reported).

9

because he had been given *in forma pauperis* status in state court proceedings within the prior six months.[26] In essence, he asserted that the IFP status was awarded "based on need," and so the appellant fit within the exemption protecting income of those receiving assistance based on need within the prior six months. The Minnesota Court of Appeals rejected that argument, however, because, "[a]lthough IFP status is awarded based on need, its purpose is to provide access to the courts and not to address basic economic needs."[27] Moreover, the Court held, "the evaluation of an IFP application is significantly less rigorous than the evaluation of qualifications for the assistance programs listed in section 550.37, subd. 14," which "provide direct payments or subsidies to address the basic economic needs of low-income recipients."[28] The Trustee asserts that, like IFP status, the Education Credit has an "economic component." But, he asserts, it does not provide direct payments or subsidies to address the basic needs of low-income recipients; instead, it simply provides access to the courts.

Education – like food and medical care – is a basic need of all children in Minnesota, and we believe the Education Credit's ultimate purpose is to assist people with low incomes in providing an education for their children. In contrast to being given IFP status, the Education Credit is in monetary form (like the federal EIC is) and, thus, does indeed provide "direct payments or subsidies to

---

[26] Recall, § 550.37, subd. 14 also protects "[t]he salary or earnings of any debtor who is or has been an eligible recipient of government assistance based on need . . . for a period of six months after . . . all public assistance for which eligibility existed has been terminated."

[27] *Id.* at *5.

[28] *Id.*

10

address the basic economic needs of low-income recipients" in obtaining quality education for their children.

The Trustee next asserts that, because payment of education-related expenses is "voluntary," it is similar to an employed taxpayer overwithholding in order to receive a refund, and not need-based assistance. We disagree. As the Court in *Tomczyk* held with regard to the exempt federal EIC, and as we said in *In re Johnson*, it is significant that the Education Credit here is not, technically, a *refund*, inasmuch as a person is entitled to receive it regardless of whether they had any tax liability.[29] Rather, as opposed to being a *refund* of an overpayment of taxes which have been paid by the taxpayer, the Education Credit is monetary assistance the Minnesota legislature has determined relatively low-income people should be given--whether they paid any taxes or not-- to assist with their children's education. As such, it is assistance "based on need," not a voluntary pseudo-savings program.

Finally, the Trustee asserts that giving the Education Credit exempt status under § 550.37, subd. 14 leads to an absurd result because the income of anyone who receives such a credit is protected outside of bankruptcy for six months. In other words, someone wishing to protect their income or assets from collection outside of bankruptcy could do so by claiming the credit. But that is true of all kinds of need-based assistance, and that is one reason we believe the income thresholds are particularly important inasmuch as they hamper potential abuse.

In sum, we believe the Education Credit is more comparable to the federal EIC, which *Tomczyk* held to be exempt, than it is to the federal Additional Child Tax Credit, Minnesota's property tax credit, or being granted IFP status in court

---

[29] *In re Tomczyk*, 295 B.R. at 896; *In re Johnson*, 509 B.R. at 216.

proceedings. Because the Education Credit is available only to individuals with relatively low income, is a refundable credit (as opposed to a refund of overpayment of taxes) and because it is, in large part, intended to assist low-income individuals in obtaining quality education for their children, we conclude that it is a "direct payment[] or subsid[y] to address the basic economic needs of low-income recipients" in obtaining such quality education for their children. It is, therefore, government assistance based on need under § 550.37, subd. 14, and the Bankruptcy Court correctly concluded it is exempt under that statute.

## CONCLUSION

Based on the foregoing, the Order of the Bankruptcy Court permitting the Debtor's claimed exemption in the portion of his state income tax refund attributable to the Minnesota Education Credit as a "government assistance benefit" is AFFIRMED.

_____